601 So.2d 1230 (1992)
STATE of Florida, Appellant,
v.
Eric Arnaz ASHLEY, Appellee.
No. 91-2135.
District Court of Appeal of Florida, Fourth District.
June 10, 1992.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Georgina Jimenez-Orosa, Asst. Atty. Gen., West Palm Beach, for appellant.
Robert J. Becerra of Raskin & Raskin, P.A., Miami, for appellee.
POLEN, Judge.
The state appeals from an order of the circuit court which dismissed count I of a five-count information. We reverse.
Defendant Eric Ashley was stopped for speeding and the police subsequently found an unloaded firearm in his car. Count I of the information charged that he unlawfully and knowingly carried on or about his person a concealed firearm, contrary to section 790.01(2), Florida Statutes (1989). Ashley filed a sworn motion to dismiss, arguing that he fell within section 790.25(5), which states that it is not a violation of section 790.01 to possess a concealed firearm within the interior of a private conveyance if the firearm "is securely encased or is otherwise not readily accessible for immediate use."
According to Ashley, the firearm found in his car was not readily accessible for immediate use because it was unloaded. Ashley relied on a recent second district case, Amaya v. State, 580 So.2d 885 (Fla. 2d DCA 1991), in which that court held that an unloaded firearm is not readily accessible for immediate use. The circuit court, relying on Amaya, granted the motion to dismiss. The court noted that no cases from the fourth district had addressed this issue, but pointed out that a circuit court "wheresoever situate in Florida is equally bound by a decision of a District Court of Appeal regardless of its appellate district." See State v. Hayes, 333 So.2d 51 (Fla. 4th DCA 1976).
In Amaya, as in this case, the defendant was charged with carrying a concealed weapon in violation of section 790.01(2). Amaya, like the defendant here, contended that he fell within the section 790.25(5) exception because the firearm was not loaded. According to the Amaya court:
We must agree with that contention. We cannot agree with the state's argument that the statutory exception was not applicable because a firearm need not be operable in order to be accessible for immediate use, e.g., for use in pointing it at someone in a threatening manner. Section 790.25(5), we conclude, contemplates an operable firearm. In reaching this conclusion, we are persuaded by that section's additional language that "[t]his subsection shall be liberally construed in favor of ... lawful use... ." We also cannot agree with the state's argument that the statutory exception was not applicable because the firearm could have been loaded and become operable. That *1231 exception requires that the firearm be "readily accessible for immediate use."
580 So.2d at 886 (emphasis added).
The Amaya court's interpretation of 790.25(5) necessarily means that a firearm can only be "readily accessible for immediate use" when it is both loaded and capable of being fired. For the reasons that follow, we reject the second district's interpretation of the statute.
While section 790.25(5) clearly states that "[t]his subsection shall be liberally construed in favor of the lawful use, ownership, and possession of firearms and other weapons," Amaya is the first and only case we have found to specifically address this particular language. By setting down a bright-line rule that an unloaded gun can never be "readily accessible for immediate use," we believe the Amaya court interpreted the statute too liberally.
The Amaya court failed to address section 790.001(15), which actually defines "readily accessible for immediate use," as meaning "that a firearm or other weapon is carried on the person or within such close proximity and in such a manner that it can be retrieved and used as easily and quickly as if carried on the person." (Emphasis supplied.) The statute says "used," not "fired". In short, the plain language of the statute does not require that the firearm be loaded in order to be "readily accessible for immediate use."
The Amaya court also failed to offer any case law support for its interpretation of section 790.25(5). There are no citations to any of the other cases interpreting the statute. For example, in Alexander v. State, 477 So.2d 557 (Fla. 1985), the Florida Supreme Court conducted a thorough analysis of section 790.25(5). The court first noted that the "legislature has declared that the objectives of Chapter 790 are `to promote firearms safety and to curb and prevent the use of firearms and other weapons in crime and by incompetent persons without prohibiting the lawful use in defense of life, home, and property... .'" 477 So.2d at 559. Turning to the particular language of section 790.25(5), the court held:
We agree with the state that by using the `or is otherwise' phrase the legislature clearly indicated that the primary requirement is that the firearm not be `readily accessible for immediate use.' The prohibition against carrying a concealed weapon that is readily accessible for immediate use is reasonably related to the legislative purposes of promoting firearms safety and preventing the use of firearms in crimes.
477 So.2d at 559-60 (emphasis in original).
Once again, there is no mention in Alexander that the gun must be operable or loaded in order to be readily accessible for immediate use. In fact, none of the cases interpreting the statute before Amaya have required that a gun be loaded in order for it to be considered "readily accessible for immediate use."
We also note that the statutory definition of firearm indicates that an unloaded weapon is still considered a firearm: "`Firearm' means any weapon (including a starter gun) which will, is designed to, or may readily be converted to expel a projectile by the action of an explosive." § 790.001(6), Fla. Stat. (Supp. 1990) (emphasis supplied). The Florida Supreme Court has squarely addressed the issue of whether an unloaded gun fits the definition of firearm under section 790.001(6). In Bentley v. State, 501 So.2d 600 (Fla. 1987), the defendant challenged her conviction and mandatory minimum sentence for aggravated assault with a firearm. She alleged that because her gun was unloaded it did not fit the statutory definition of firearm. The court rejected her argument, noting that her weapon "was designed, or might readily have been converted, to expel a projectile despite the fact that the gun in her possession was unloaded." According to the court:
In this case, the state need only have proved that the weapon in Mrs. Bentley's possession was designed to or could be readily converted to expel a projectile. Nash v. State, 374 So.2d 1090 (Fla. 4th DCA 1979), following Bass v. State, 232 So.2d 25 (Fla. 1st DCA 1970). Clearly, under this standard, Mrs. Bentley displayed a firearm pursuant to section *1232 790.001(6). Whether the gun in her possession was loaded or whether she had available ammunition is irrelevant.
501 So.2d at 602.
In Hardee v. State, 516 So.2d 110 (Fla. 4th DCA 1987), approved, 534 So.2d 706 (Fla. 1988), the defendant challenged his conviction for burglary of a dwelling while armed, contending that only a loaded gun constitutes a dangerous weapon for application of section 810.02(2)(b). This court rejected his argument and extended the Bentley analysis to the particular circumstances of this case:
In a slightly different context the supreme court has determined that whether a firearm is empty or loaded is not material to the issue of whether a person convicted of burglary had in possession a firearm for purposes of imposing a mandatory minimum sentence of three years' incarceration. Bentley v. State, 501 So.2d 600 (Fla. 1987). There is no logical distinction to be made between that application and its relevance here.
Id. 516 So.2d at 111.
The decision in Alexander construing section 790.25(5), along with the decisions in Bentley and Hardee defining "firearm" and "dangerous weapon," lead us to conclude that an unloaded firearm may indeed be "readily accessible for immediate use" as used in section 790.25(5). We therefore reject the second district's analysis in Amaya.
The order granting the defendant's motion to dismiss, which relied on Amaya, is therefore reversed. We note conflict with Amaya.
REVERSED and REMANDED for proceedings consistent herewith.
GUNTHER, J., concurs.
DELL, J., dissents with opinion.
DELL, Judge, dissenting.
I respectfully dissent. I agree with the Second District Court of Appeal's decision in Amaya v. State, 580 So.2d 885 (Fla. 2d DCA 1991). With all due respect, I think that the majority in interpreting section 790.25(5), Florida Statutes (1989), misplaces its reliance upon cases involving convictions which require mandatory minimum sentences for use of a firearm. Bentley v. State, 501 So.2d 600 (Fla. 1987), a conviction for aggravated assault with a firearm; Hardee v. State, 516 So.2d 110 (Fla. 4th DCA 1987), approved, 534 So.2d 706 (Fla. 1988), a conviction for burglary of a dwelling with a firearm. In so doing, I believe that the majority has ignored the legislature's directive that "[t]his subsection [790.25(5)] shall be liberally construed in favor of the lawful use, ownership, and possession of firearms... ." § 790.25(5), Fla. Stat. (1989).