W. SHARP, Judge,
dissenting.
I respectfully dissent. While I appreciate the position of the majority per curiam opinion, which relies on Amaya v. State, 580 So.2d 885 (Fla. 2d DCA 1991), I find more persuasive the Fourth District Court of Appeal’s decision in State v. Ashley, 601 So.2d 1230 (Fla. 4th DCA 1992). The conflict, which our supreme court will soon resolve, centers on what the Legislature meant by the phrase “otherwise not readily accessible for immediate use ” in section 790.25(5).
This statute makes lawful the possession of a concealed firearm within the interior of a private conveyance under the circumstances outlined in section 790.25(5), Florida Statutes (1991), which provides:
(5) Possession in private conveyance. — Notwithstanding subsection (2), it is lawful and is not a violation of s. 790.01 to possess a concealed firearm or other weapon for self-defense or other lawful purpose within the interior of a private conveyance, without á license, if the firearm or other weapon is securely encased or is otherwise not readily accessible for immediate use. Nothing herein contained prohibits the carrying of a legal firearm other than a handgun anywhere in a private conveyance when such firearm is being carried for a lawful use. Nothing herein contained shall be construed to authorize the carrying of a concealed firearm or other weapon on the person. This subsection shall be liberally construed in favor of the lawful use, ownership, and possession of firearms and other weapons, including lawful self-defense as provided in s. 776.012. (emphasis supplied)
In this case, the evidence at trial established that Smith was carrying a semiautomatic handgun in a pouch attached to the driver’s door of his VW. He stopped his vehicle to talk with an undercover policeman (but unknown as such to him) in a park, late at night. Smith may have felt threatened. He pointed the firearm at the undercover policeman, and waived it in his direction, remarking that he was willing and able to defend himself.
The undercover policeman persuaded Smith to put the firearm back into the pouch. Smith drove away to “check” on police activity at the other end of the park, as requested by the undercover policeman. Smith returned just as a backup police unit arrived in response to the undercover deputy’s call. Smith threw the weapon under the driver’s seat just before he was arrested.
*446 The issue focused on at trial was whether the firearm had been “concealed.” Not until this appeal did defense counsel argue the firearm had to be loaded to be considered “readily accessible for immediate use.” In fact, defense counsel said:
I am not going to argue that the gun has to be loaded to be a firearm. I mean that is plainly not true and the standard jury instruction makes that plain and clear.”
Assuming the Ashley-Amaya issue was not waived in this case, I think the facts of this case illustrate why the Amaya, view of section 790.25(5) goes too far. Smith (in fact) used the firearm to intimidate the undercover deputy by pulling it out of its pouch, pointing it at the deputy, and threatening him with it. In a real sense, the concealed firearm was “used” by Smith, although it was not fired.
It also appears to me that the Amaya interpretation of section 790.25(5) reads too much into “readily accessible for immediate use.” The statute does not say readily accessible and ready to fire. Such an interpretation will open the door to defenses that could undermine the effectiveness of the statute. I predict there will be a whole spectrum of cases involving firearms in varying stages of inoperability, which defendants will argue are not ready for instant firing.
I question how “unready to fire” a semiautomatic handgun is, when a fully loaded clip or magazine is lying close at hand on the passenger seat, as in Ashley. In the hands of an accomplished shooter, an unloaded firearm can be loaded within a fraction of a second. Or, if pursued by police, a suspect can quickly unload a firearm, and argue no violation of section 790.01(2) occurred.
Further, in my view, the definitions in chapter 790.001 are persuasive that the Legislature did not intend violations of this chapter to turn on whether or not the firearm is loaded or is (in fact) operable at a critical moment. The definition of “firearm” in § 790.00(6) provides:
“Firearm” means any weapon (including a starter gun) which will, is designed to, or may readily be converted to expel a projectile by the action of an explosive; the frame or receiver of any such weapon; any firearm muffler or firearm silencer; any destructive device; or any machine gun. The term “firearm” does not include an antique firearm unless the antique firearm is used in the commission of a riot; the inciting or encouraging of a riot; or the commission of a murder, an armed robbery, an aggravated assault, an aggravated battery, a burglary, an aircraft piracy, a kidnapping, or a sexual battery.
In Bentley v. State, 501 So.2d 600 (Fla.1987) the Florida Supreme Court relied upon this definition of firearm in section 790.001(6) in holding that the three year minimum mandatory sentence of section 775.087(2) could be imposed even though the handgun was unloaded.
When section 790.25(5) was added to chapter 790, two new definitions were also adopted to explain the terms “readily accessible for immediate use” and “securely encased.” Section 790.001(15) states “readily accessible for immediate use” means “a firearm or other weapon carried on the person, or within such close proximity and in such a manner that it can be retrieved and used as easily and quickly as if carried on the person.” Section 790.-001(16) declares that “securely encased means in a glove compartment, whether or not locked; snapped in a holster; in a gun case, whether or not locked; in a zippered gun case; or in a closed box or container which requires a lid or cover to be opened for access.” Clearly these definitions concern solely the geographic location of a concealed firearm in the interior of a conveyance, with reference to a person inside the conveyance; and the container in which it must be carried. It follows that the legislature did not intend to inject into the terms “readily accessible for immediate use” or “securely encased” the additional meaning of being loaded and instantly operable.